[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 24, 2010
JOHN LEY
CLERK

_____

No. 09-13329
Non-Argument Calendar

_____

D. C. Docket No. 07-01739-CV-WSD-1

TONJI WHITE,

Plaintiff-Appellant,

versus

STATE OF GEORGIA,
SONNY PERDUE,
in his capacity as Governor
of the State of Georgia, et al.,

Defendants,

S. KELLMAN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 24, 2010)

Before TJOFLAT, EDMONDSON and BIRCH, Circuit Judges.

PER CURIAM:

Tonji White brought this civil rights action against Officer Stuart Kellman of the Atlanta Police Department, a Georgia State Patrol officer, and three other law enforcement officers seeking damages under 42 U.S.C. § 1983 for the injuries she received during her arrest—after a high speed vehicular chase—for automobile theft, criminal trespass, and obstructing an emergency medical technician on August 27, 2005. White alleged that her injuries—she claimed to have been shot in the buttocks—were caused by the use of excessive force by one or more of the officers in violation of the Fourth and Fourteenth Amendments.[1] After the parties joined issue and engaged in discovery, Kellman moved the court for summary judgment.[2] The district court granted the motion, and White appeals, arguing that summary judgment should not have been granted because there existed genuine issues of material fact regarding whether Kellman shot her during her arrest.[3]

---

[1] In addition to her constitutional claim, White's complaint contains state law claims for assault and battery and intentional infliction of emotional distress. White was represented by counsel when she brought this action. Counsel subsequently obtained leave of court to withdraw; White has proceeded pro se since then.

[2] White also moved the court for summary judgment.

[3] White also argues in passing that her Fourteenth Amendment rights were violated when a Georgia State Patrol trooper failed to protect her from the gunshot, and that her arrest was unlawful because she was not read her rights as required by the Fourth Amendment. We decline to address these additional arguments, however, because White raised them for the first time on appeal. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004)

The district court granted Kellman summary judgment because the overwhelming evidence, though contradicted in part by White's testimony, established that Kellman, who arrived on the scene after White had been arrested and handcuffed, did not shoot White—in fact, the overwhelming evidence, including uncontradicted medical testimony, is that she was not shot at all. It is settled law that where the record tells two different stories, one blatantly contradicted by the evidence, the court is not required to adopt that version of the facts when ruling on summary judgment. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007) (holding that the district court should not have relied on a version of events "utterly discredited" by an uncontested videotape, but "should have viewed the facts in the light depicted in the videotape"). After reviewing the record in this case, we are satisfied that the district court ruled correctly.

The district court order granting Kellman summary judgment sets out the facts that led to this lawsuit against Kellman, and explains in a thoroughgoing way why White's claim that Kellman shot her was completely contradicted by the evidence.

> In the early morning hours of August 27, 2005, Plaintiff was driving a white Chevrolet pickup truck in Atlanta, Georgia. Law

(holding that "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt").

enforcement officers on a routine patrol identified the truck Plaintiff was driving as one which was reported stolen the previous day. . . . Officers from the Georgia State Patrol and the Atlanta Police Department pursued Plaintiff as she drove the stolen truck. Despite several police cruisers following her and after repeated use of flashing lights and sirens, Plaintiff refused to halt for law enforcement officers. Video footage of this chase taken from inside four Georgia State Patrol cruisers shows Plaintiff leading what appears to be at least five police cars on a high-speed chase through downtown Atlanta. . . . Offers repeatedly used their vehicles to try to force Plaintiff to slow down and pull over, at times crashing into the rear of the truck. Plaintiff at one point turned the truck around on Interstate 20 and began driving at high speed down the opposing side, toward oncoming traffic. The Court's review of the chase footage reveals at least two instances where oncoming cars were forced to swerve quickly out of Plaintiff's way to avoid a head-on collision at highway speeds. Plaintiff's actions risked the lives of other motorists and law enforcement agents. . . . Plaintiff eventually exited Interstate 20 and continued leading law enforcement officers on a high-speed chase through Atlanta, at one point driving off-road through the fence of a daycare center. Plaintiff lost control of the vehicle, without any contact by law enforcement vehicles, and crashed into a utility pole. Plaintiff locked herself in the truck and refused to exit the vehicle. Law enforcement officers forcibly removed Plaintiff from the truck. The video footage shows one officer breaking the truck's driver's side window with a metal rod. . . .

This action hinges on two determinations. First, whether there is a genuine dispute of fact where the record tells two different stories and where one of them is blatantly contradicted by the evidence. The primary issue in this case is whether Plaintiff's version of events of her arrest on August 27, 2005, which is supported in part by medical records, is blatantly contradicted by the facts developed by Kellman, which directly contradicts Plaintiff's testimony that she was shot and offers testimony of the attending physician who examined Plaintiff after her arrest and who now states conclusively that her injuries where not caused by a gunshot. The second question is whether the force used by law enforcement in effecting Plaintiff's arrest was excessive. The Court concludes [Plaintiff's testimony] that she was

4

shot by defendant Kellman is blatantly contradicted by the other evidence of record and there is no genuine factual dispute. . . . The Court is not required . . . to accept allegations which are completely unsupported by the record. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Id.

The judgment of the district court is

AFFIRMED.